UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUSAN WALSH,
    Plaintiff,
    v.

DONER INTERNATIONAL
LIMITED, INC., DETROIT
ROYALTY INCORPORATED, &
DONER PARTNERS, LLC d/b/a
DONER, a limited liability
company,
    Defendants.
_____/

Case No.: 18-13930

Terrence G. Berg
United States District Judge

R. Steven Whalen
United States Magistrate Judge

## OPINION AND ORDER

Plaintiff has brought this case under the Age Discrimination in Employment Act ("ADEA"), the Equal Pay Act, and Michigan's Elliott-Larsen Civil Rights Act. Before the Court is plaintiff's January 20, 2020 Renewed Motion to Compel Discovery. (ECF No. 22). For the reasons set forth below, Plaintiff's motion to compel is **GRANTED IN PART, DENIED IN PART**.

### I. General Principles

Fed.R.Civ.P. 26(b) provides as follows concerning the scope of discovery in a civil case:

> "Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any

> party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable."

The Court has broad discretion over discovery matters. *Trepel v. Roadway Express, Inc.*, 194 F.3d 708 (6th Cir. 1999).

## II. Discussion

### A. Request for Financial Documents

To support her age discrimination case, Plaintiff requested (1) a copy of Defendants' "certified annual financial statements for 2017 to 2018[,]" (2) a copy of the "auditor's report pertaining to . . . the certified annual financial statements[,]" (3) financial statements for the period ending September 30, 2019, and (4) all documents in existence as of May 2018 that support deposition testimony to the effect that the May 2018 reduction in force ("RIF") occurred because of lost revenue. (ECF No. 22, PageID.362-36). Plaintiff states that Defendants have refused to produce any documents pertaining to its revenue.

In response, Defendants state that certified annual statements and auditor's reports do not exist. (ECF No. 25, PageID.664). They did, however, produce "internal income/financial statements for the period of 2016 through 2018." (*Id.*).

Defendants argue that the request for financial documents related to the May 2018 RIF was untimely. Plaintiff served the request on December 5, 2019. Discovery closed a week later. This short turnaround did not give Defendants 30 days to respond as required by the Court's practice guidelines. In any event, Defendants insist that Plaintiff has all the responsive documents that exist. (*Id.* at PageID.664-65).

Plaintiff's motion to compel financial documents is denied. First, Plaintiff has offered no evidence that certified annual statements and auditor's reports in fact do exist, except for the mere suspicion that a company as large as Doner would have such documents. Defendants are aware of their duty to engage in discovery in good faith and to supplement discovery responses should responsive documents become known to them. Fed. R. Civ. P. 26(e). But, the Court cannot compel production of documents that do not exist.

Second, it appears defendants have produced the requested financial documents. Plaintiff seeks financial records or revenue reports that support defendants' assertion that the May 2018 was caused by a reduction in revenue in plaintiff's employment team. Defendants produced the 2016-2018 yearly revenue for plaintiff's team (the creative department) and company-wide revenue. (ECF Nos. 23-4, 23-5). Plaintiff did not explain why these documents are insufficient or what additional financial documents she is looking for that should be produced.

Indeed, plaintiff did not even acknowledge the financial reports that were produced and are in the record. Because it appears the requests were answered with financial documents, and it is unclear what else could be or should be produced, the motion to compel financial documents is denied.

In making her opening argument for the financial documents, Plaintiff references her separate request for a copy of all contracts between the defendant company and its clients for the last three years. She cited this request as an example of additional attempts to obtain financial information, and to help make her point that defendants were not responding to discovery. (ECF No. 22, PageID.364). Defendants treat this reference as a request to compel them to produce the contracts. That is not the case. Plaintiff did not argue for the production of the contracts. Instead, she makes plain that she is asking the Court to compel production of "the above-referenced financial documents relating to Defendant's actual revenue and anticipated revenue."

In addition to the arguments discussed above, Plaintiff makes an undeveloped contention that she should be allowed to re-depose Defendants' Chief Financial Officer, Naveen Passey. In a footnote, Plaintiff explains that Mr. Passey's deposition took place on December 11, 2013, before she had any financial documents. She "objected to being placed in such a predicament" and requested the opportunity to re-depose Mr. Passey after production of the financial

documents. "Plaintiff renews her objection and request here." In other words, in this footnote, plaintiff apparently asks the Court for an order compelling the re-deposition of the chief financial officer. Her request to re-depose will not be considered. "[I]ssues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

### B. Employees Terminated between 2015-2019

The second dispute centers around Plaintiff's request for a list of all employees who were terminated or laid-off between 2015 and 2019. Defendants produced the list of terminations *and hires* in the creative department for the years requested, believing this would be sufficient after discussions between counsel on the matter. (ECF No. 23, PageID.667-68; ECF No. 23-1). Plaintiff insists that she knows of more individuals in the creative department who were terminated during that time but not listed, and that she is entitled to the list of terminated employees *company-wide*. Defendants disagree.

Regarding the list of creative department terminations, Defendants are directed to review their personnel information and supplement their production

with any additional creative department employees terminated between 2015-2019 not previously disclosed.[1]

Plaintiff cites authority for the proposition that statistical evidence showing a company practice of discrimination against a group of employees is relevant, particularly for establishing pretext. (ECF No. 22, PageID.366-67). Of the cases she cites, most on point is *Hollander v. American Cyanamid Co.*, 895 F.2d 80 (2d Cir. 1990). In that case, Hollander, like Plaintiff, raised an age discrimination claim under the ADEA. Hollander posed an interrogatory to American Cyanamid to identify each management level employee over the age of 40 who terminated employment with the company. The company objected that the request was overbroad and sought information pertaining to employees throughout the company, not just the facility in which Hollander worked. The district court denied the motion to compel a response. The Second Circuit reversed, stating, "[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." *Id.* at 84.

---

[1] It appears Defendants have already supplemented their production with the full list. (*See* ECF No. 39-1, PageID.2498). If so, Defendant will indicate that there are no additional responsive documents.

Defendants cite *Mims v. Electronic Data Systems Corp. (EDS)*, 975 F. Supp. 1010, 1018 (E.D. Mich. 1997), in support of their position that hiring and firing information beyond Plaintiff's employment unit is irrelevant.  There, Mims offered statistical evidence showing terminations of older employees company-wide.  But the court found the relevant employment unit to be the unit managed by the decision maker in Mims' discharge, not the whole company.  *Id.*  Relevant here, the *Mims* court went on to say that "[e]vidence of disparities in an employment unit larger than the plaintiff's may be probative in cases where there is a single policy governing the larger unit."  But in that case, there was no evidence that the decision maker received direction as to discharges in his unit or that of a company-wide policy.  *Id.*; *see also Almond v. ABB Indus. Systems, Inc.*, 2001 WL 242548, at *20 (S.D. Ohio Mar. 6, 2001) ("Richardson's statistics are company-wide. Since the decision-making process concerning which employees should be laid off varied from department to department, company-wide statistics are not particularly useful.").

Both *Hollander* and *Mims* are persuasive in Plaintiff's favor.  First, *Hollander* stands for the proposition that evidence of company-wide practices in age discrimination cases can be relevant.  Second, *Mims* suggests that where there is some evidence of a broader, company-wide policy, or that the decision maker was governed by more senior company managers, the information Plaintiff seeks

may be relevant. To that end, Plaintiff has offered documentation tending to show that Doner's CEO, David Demuth, who likely has authority over the company and not just Plaintiff's employment unit, was involved in deciding which employees to terminate. This documentation consists of emails between Weisberg, Demuth and Mr. Passey regarding discussions on which creative department employees to terminate. Included is an attached spreadsheet defining four "scenarios" of terminations and the implications therefrom. (ECF No. 27-2, PageID.920-22). Both the CEO and CFO's involvement in the decision suggests that the decision to fire Plaintiff was not simply Weisberg's, but may have been part of a company-wide decision or policy. Defendants make the blanket assertion that Mr. Demuth was not a decision maker in Plaintiff's termination. (ECF No. 25, PageID.661, n. 1). Plaintiff also asserts that Demuth made public comments about the company's push to hire younger employees.

For the purposes of discovery, based upon the evidence in the record, Plaintiff has at least raised a question as to whether Demuth was involved in the termination decision, and whether Doner had a company-wide policy regarding the terminations in light Demuth's public comments. In other words, Plaintiff has made a sufficient showing that the termination decision was not just a unit decision made by Weisberg, but rather had some company-wide policy behind it. As such, I cannot say that the information Plaintiff seeks is irrelevant. *See Grissom v. Ingles*

*Markets, Inc.*, 2008 WL 4510585, at *3-4 (E.D. Tenn. Oct. 2, 2008) (allowing regional discovery in employment discrimination case, and potentially allowing company-wide discovery if the plaintiff had evidence of a company-wide pattern of discrimination). The motion to compel the identification of each employee hired and fired between 2015 and 2019, beyond the creative department and as set forth in the requests listed in Plaintiff's motion, is granted. This information will be produced within 30 days of this Order. I would note, however, that it appears that at least some of the requested discovery has since been produced given the discussion in this Court's Order on Defendants' motion for summary judgment. (*See, e.g.*, ECF No. 55, PageID.3726-30).

## C. Data on Plaintiff's Replacement

Lastly, Plaintiff requested a list of all employees who are performing some or all of the job duties that had been performed by her, including their resumes, compensation records, performance reviews, and the like. (ECF No. 22, PageID.372). According to Defendants, Plaintiff's position was eliminated: "No current employee performs the exact duties that were performed by Plaintiff[,]" and thus this information does not exist. (ECF No. 25, PageID.670). Defendants also argue that spreading the duties of a terminated employee among the remaining employees does not constitute replacement, accordingly, the information Plaintiff seeks is irrelevant. (*Id.* at PageID.670-71). Still, Defendants produced workhour

data for all other creative directors in 2018, which provides information regarding the accounts on which other employees holding Plaintiff's title worked following her termination. Plaintiff did not address Defendants' argument or the workhour data production in her reply brief.

Defendants' position that there is no employee who took over any of Plaintiff's job duties seems unlikely. There is no assertion from either party that when Plaintiff was terminated the company also dropped all of its clients for which Plaintiff worked. Her work for those clients had to have been distributed to other employees. Despite this, I agree with Defendants that information regarding who took over Plaintiff's responsibilities is irrelevant in this case.

The fourth element of Plaintiff's discrimination case requires that she prove that she was replaced by a substantially younger employee, or that she bring forth evidence that shows that the employer's decision was motivated by age. *Deleon v. Kalamazoo Cty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014). In a RIF case such as this, the employee is not replaced, and thus the plaintiff must show that the termination was motivated by age, not that she was replaced. *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014). As Plaintiff seeks this discovery to show that she was replaced by younger employees—an irrelevant showing in this particular case—the motion is denied.

D. Attorney's Costs and Fees

The issue on which this Court granted the motion to compel does not justify an award of fees and costs or sanctions. Defendants were justified in withholding company-wide hiring and firing data as irrelevant, but Plaintiff came forward with evidence suggesting a company-wide policy or influence. Further, though some of the discovery was not forthcoming until after discovery had closed, it appears the parties had been engaging in communications to resolve the discovery disputes before Plaintiff filed this motion. Hence, to the extent timeliness of responses is an issue, it is not one that justifies sanctions.

### III. Conclusion

Under the terms set forth above, Plaintiff's motion (ECF No. 22) is **GRANTED IN PART AND DENIED IN PART**.

In addition, the Plaintiff's request for fees and costs in bringing this motion is **DENIED**.

**IT IS SO ORDERED**.

s/R. Steven Whalen
R. STEVEN WHALEN
United States Magistrate Judge

Dated: August 11, 2020

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 11, 2020 electronically and/or by U.S. mail.

s/Carolyn M. Ciesla
Case Manager
